UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHERYL CHISOM, on behalf of herself and all others similarly situated, ) ) ) | |
| Plaintiff, ) ) ) | Case No. 20-cv-06565 |
| v. ) ) ) | Judge John Robert Blakey |
| AFNI, INC., ) ) ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Cheryl Chisom sues Defendant Afni, Inc., a collection agency, alleging that its attempts to collect a debt she owed to Comcast violated the Fair Debt Collection Practices Act ("FDCPA"). Plaintiff filed a single-count putative class action complaint against Afni, [23], and Afni moves to dismiss, [26]. For the reasons explained below, this Court grants Defendant's motion.

**I.     Background**

   **A.     The Complaint's Allegations**

Plaintiff incurred an alleged debt for residential cable services provided by Comcast. [23] at ¶ 14. When she failed to pay on the account, the alleged debt went into default. *Id.* at ¶ 16. Defendant Afni attempted to collect the alleged debt and sent a collection letter ("Letter") to Plaintiff on October 19, 2020. *Id.* at ¶¶ 17–18. The Letter stated, in pertinent part:

> If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of the debt or any portion thereof, this office will:

1

> obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.

[1-1] at 2. The Letter provided "Additional Disclosures" as follows:

> The Law Limits how long you can be sued on a debt. Because of the age of your debt, COMCAST cannot sue you for it. If you do not pay the debt, Afni may report the debt to any credit reporting agency for as long as the law permits this reporting. Afni cannot sue you on this debt. In many circumstances, you can renew the debt and start the time period for the filing of a lawsuit against you if you take specific actions such as making certain payment on the debt or making a written promise to pay. You should determine the effect of any actions you take with respect to this debt.

*Id.*

When Afni mailed the Letter, neither it nor COMCAST could sue Plaintiff to collect the alleged debt because the statute of limitations on the debt had run. [23] at ¶¶ 27–28. Additionally, at the time Afni mailed the Letter, no judgment had been entered on the alleged debt. *Id.* at ¶ 30. Afni thus could not have obtained a copy of a judgment with respect to the alleged debt and mailed it to Plaintiff as represented in the Letter. *Id.* at ¶¶ 31–32.

Plaintiff claims that Defendant's conflicting statements confused her. *Id.* at ¶ 35. While the Letter referenced the possibility of obtaining and mailing a copy of a judgment on the debt, the Letter also stated that neither Defendant nor COMCAST could legally sue Plaintiff to collect the alleged debt, implying that no judgment could be obtained. *Id.* Defendant's reference to a judgment made Plaintiff believe either that a judgment with respect to the alleged debt had already been entered or that Afni or COMCAST was in the process of obtaining a judgment or could obtain a judgment in the future. *Id.* at ¶ 36.

Plaintiff alleges that she was also confused by Defendant's statement in the Letter warning her that if she failed to pay the debt, Defendant could continue credit reporting "for as long as the law permits this reporting." *Id.* at ¶ 62. Plaintiff did not know that if she disputed the debt within 30 days, the law required Defendant to stop credit reporting and verify the debt. *Id.* Plaintiff claims that Defendant's statement overshadowed any disclosure of her right to dispute the alleged debt within the 30-day validation period. *Id.* at ¶ 61.

Finally, Plaintiff asserts she was confused by Defendant's statements regarding how to "renew" the alleged debt. *Id.* at ¶¶ 66–71. Defendant failed to explain what "renew the debt" meant, and Plaintiff did not understand that by making or attempting to make a payment on the alleged debt, she would restart the statute of limitations on the debt and authorize Defendant or COMCAST to sue her on the alleged debt. *Id.* at ¶¶ 66, 71.

Plaintiff did not believe she owed the alleged debt discussed in the Letter, and, had she not been confused by Afni's statements, she would have opted to dispute or verify it; instead, because Defendant's statements confused her, Plaintiff did not dispute or verify the alleged debt as was her right. *Id.* at ¶¶ 20, 79–80.

### B. Plaintiff's Claims

Plaintiff sued on behalf of a putative class claiming Defendant violated § 1692 of the FDCPA. More specifically, in her single count, Plaintiff alleges that Defendant violated §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), and 1692f of the FDCPA when it stated it could obtain a copy of a judgment with respect to the alleged debt and mail

3

it to Plaintiff, when Defendant knew it could not legally do so. [23] at ¶¶ 46, 49. Plaintiff also alleges that Defendant violated sections 1692e(2)(A) and 1692g(b) of the FDCPA when it stated that it could report the alleged debt to a credit reporting agency for as long as the law permits, when in fact Plaintiff could have stopped Defendant's credit reporting by disputing the debt within 30 days. [23] at ¶¶ 58, 61. Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(1), arguing that Plaintiff lacks standing to sue, and under Rule 12(b)(6), arguing that Plaintiff's allegations fail to state a claim for violation of the FDCPA. *See* [26].

## II. Legal Standards

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal courts are only permitted to adjudicate claims that have allegedly caused the plaintiff a concrete injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (observing that Article III, Section 2 of the United States Constitution limits the jurisdiction of federal courts to "cases" and "controversies"; for a plaintiff to bring a case or controversy over which a federal court can exercise subject matter jurisdiction, a plaintiff must have standing to sue). If a plaintiff cannot satisfy this basic jurisdictional requirement, the Court must dismiss under Federal Rule of Civil Procedure 12(b)(1).

To demonstrate Article III standing, Plaintiff must show that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Plaintiff bears the burden of establishing all

three elements and must support each element "with the manner and degree of evidence required at the successive stages of litigation." *Lujan*, 504 U.S. at 561. At the pleading stage, a complaint providing "general factual allegations of injury resulting from defendant's conduct" suffices to establish Article III standing. *Id.*

In evaluating a motion to dismiss under Rule 12(b)(1), this Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff; if necessary, the Court may consider matters outside the pleadings to ascertain jurisdiction. *Alicea-Hernandez v. Catholic Bishop of Chi.*, 320 F.3d 698, 701 (7th Cir. 2003).

### B. Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must provide the defendant "fair notice" of the claim "and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Additionally, a complaint must contain sufficient facts to "state a claim to relief that is plausible on its face"—one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556, 570). This plausibility standard does not equate to a probability standard; however, it asks for more than a "sheer possibility" that defendant engaged in unlawful behavior. *Iqbal*, 556 U.S. at 678.

In evaluating a motion to dismiss under Rule 12(b)(6), the Court similarly accepts as true all well-pleaded allegations and draws all reasonable inferences in favor of the plaintiff. *Id.* The Court need not accept as true legal conclusions. *Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 603 (7th Cir. 2019).

## III. Analysis

The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. By way of example, the statute identifies specific conduct that violates this section:

> (1) The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.
> (2) The false representation of--
>     (A) the character, amount, or legal status of any debt; or
>     (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
> (3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.
> (4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
> (6) The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to--
>     (A) lose any claim or defense to payment of the debt; or
>     (B) become subject to any practice prohibited by this subchapter.

(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.
(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.
(9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.
(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.
(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.
(12) The false representation or implication that accounts have been turned over to innocent purchasers for value.
(13) The false representation or implication that documents are legal process.
(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.
(15) The false representation or implication that documents are not legal process forms or do not require action by the consumer.
(16) The false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 1681a(f) of this title.

Plaintiff invokes §§ 1692e(2)(A), (5), and (10). *See* [23] at ¶ 44. She alleges that Afni: represented that "it could obtain a copy of a judgment and mail it to Plaintiff when it knew it could not legally do so," *id.* at ¶ 46; and "misrepresented the legal status of an alleged debt and threatened an action it did not intend to take" and

7

legally could not take, *id.* at ¶ 47.  Plaintiff alleges that Defendant stated that upon written request it would obtain a copy of a judgment and mail it to Plaintiff, when it knew no such judgment existed or was legally possible to obtain.  *Id.*  Plaintiff also claims Defendant violated § 1692f, which prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  In connection with this section, Plaintiff again relies upon Afni's statement that it would obtain a copy of a judgment and mail it to Plaintiff when it knew it was legally impossible for it do so.  [23] at ¶ 49.  Plaintiff also alleges that a judgment was neither applicable, nor legally available, because the statute of limitations had run on the alleged debt.  *Id.* at ¶ 50.

Defendant moves to dismiss both for lack of standing and for failure to state a claim upon which relief may be granted.  The Court considers each in turn.

### A.  Defendant's Rule 12(b)(1) Motion to Dismiss for Lack of Standing

Defendant first argues that Plaintiff lacks Article III standing because she did not sufficiently plead any concrete injury in fact and instead alleged a bare procedural violation of the FDCPA.  [26-1] at ¶¶ 12, 14.  Plaintiff disagrees, arguing that the confusing and misleading content of the Letter caused her to forego her right to seek verification of the debt, which sufficiently establishes a concrete injury in fact.  [43] at 7–8.

To establish injury in fact, Plaintiff must allege that she suffered an "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation

8

marks omitted). A "concrete" injury may be tangible or intangible, but it must actually exist. *Spokeo*, 136 S. Ct. at 1548–49. In the context of a statutory violation, a plaintiff who alleges "bare procedural violations" absent any concrete harm fails to satisfy the injury in fact requirement of Article III standing. *Id.* at 1549; *see also Casillas v. Madison Ave. Assocs.*, 926 F.3d 329, 334 (7th Cir. 2019). To establish a concrete injury in fact, a plaintiff claiming confusion from a dunning letter must demonstrate that the confusion led her to take some detrimental action. *Smith v. GC Servs. L.P.*, 986 F.3d 708, 710 (7th Cir. 2021) (noting that a plaintiff cannot establish an Article III injury absent an allegation that she took a detrimental step, such as paying money she did not owe, after being confused); *Larkin v. Fin. Sys. of Green Bay*, 982 F.3d 1060, 1066 (7th Cir. 2020) (holding that a plaintiff must allege that a dunning letter confused or misled her to her detriment to establish a concrete injury in fact).

In *Casillas*, the plaintiff claimed a debt collector violated the FDCPA when it sent her a dunning letter that failed to specify that she had to communicate any verification request in writing to receive the statutory protections. 926 F.3d at 332. Yet, the plaintiff did not allege that she tried, or even considered trying, to verify the debt orally, and, in fact, the record left no doubt that plaintiff owed the debt. *Id.* at 334. Based upon this, the court determined that plaintiff failed to allege that she had lost any statutory protections and thus failed to allege any concrete harm; she had alleged nothing more than a "bare procedural violation," and such a violation,

"divorced from any concrete harm," fails to satisfy Article III's standing requirement. *Id.* at 332, 334.

Here, Plaintiff alleges that she did not believe she owed the alleged debt and would have disputed the debt or sought verification of the debt had she not been confused by the language in Defendant's Letter. [23] at ¶¶ 63, 79–80. Thus, in contrast to the plaintiff in *Casillas*, Plaintiff here alleges more than just a procedural violation; she alleges that Defendant's confusing language harmed "the concrete interest that the statute protected"— namely, her right to dispute or verify her supposed debts to avoid the use of abusive debt collection practices. *See Casillas*, 926 F.3d at 333; 15 U.S.C. § 1692(a). Article III's "strictures are met not only when a plaintiff complains of being deprived of some benefit, but also when a plaintiff complains that she was deprived of a chance to obtain a benefit." *Robertson v. Allied Sols.*, 902 F.3d 690, 697 (7th Cir. 2018) (first citing *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017); then citing *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993)). An informational injury—withholding information when a statute requires its disclosure—satisfies Article III "if the plaintiff establishes that concealing information impaired her ability to use it for a substantive purpose that the statute envisioned." *Robertson*, 902 F.3d at 694. By pleading that her confusion led her to forego her statutory right to dispute the alleged debt, Plaintiff has alleged a concrete injury in fact, and the Court declines to dismiss her amended complaint for lack of standing.

10

**B.     Defendant's Rule 12(b)(6) Motion to Dismiss Any Claim under §§ 1692e and 1692f**

Plaintiff alleges that Defendant violated § 1692e and § 1692f of the FDCPA, claiming Defendant's contradicting statements regarding the possible attainment of a judgment with respect to the alleged debt were unfair and misleading. [23] at ¶¶ 47, 49. Defendant moves to dismiss Plaintiff's claim in its entirety, arguing that Plaintiff has failed to state a claim for violation of either section; Defendant argues that Plaintiff's claim, whether based in § 1692e or § 1692f, is implausible and predicated on a bizarre and idiosyncratic reading of Defendant's Letter, which it claims is patently not confusing to the unsophisticated consumer. [26-1] at ¶ 24; [48] at ¶ 10.

The FDCPA prohibits a debt collector from using any "false, deceptive, or misleading representation" with respect to the collection of a debt, 15 U.S.C. § 1692e, and also prohibits a debt collector from using "unfair or unconscionable means" to collect a debt, *id.* § 1692f. To successfully state a claim under § 1692e, a plaintiff must plausibly assert that a dunning letter is: (1) false; (2) misleading to the unsophisticated consumer; and (3) material. *Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 366 (7th Cir. 2018); *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012); *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757 (7th Cir. 2009). The inquiry under § 1692f is similar and involves the determination of how an unsophisticated consumer would perceive the dunning letter. *McMillan v. Collection Pros., Inc.*, 455 F.3d 754, 765 (7th Cir. 2006); *Fields v. Wilber L. Firm, P.C.*, 383 F.3d 562, 565 (7th Cir. 2004).

The unsophisticated consumer may be "uninformed, naïve, and trusting," but is "not a dimwit," has basic financial knowledge, and is able to make rudimentary logical inferences. *Lox*, 689 F.3d at 822 (quoting *Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003)). The unsophisticated consumer does not read dunning letters in a "bizarre or idiosyncratic fashion" but she is also not presumed to know relevant legal precedent. *Boucher*, 880 F.3d at 366 (quoting *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2007)); *Lox*, 689 F.3d at 825. Whether an unsophisticated consumer would find particular language in a dunning letter confusing constitutes a question of fact in this circuit. *Lox*, 689 F.3d at 822; *Boucher*, 880 F.3d at 366. Therefore, courts only dismiss 1692e claims in cases involving statements that are plainly and clearly not misleading on their face. *Lox*, 689 F.3d at 822; *Boucher*, 880 F.3d at 366.

The Seventh Circuit has cautioned district courts against finding dunning letters unconfusing as a matter of law because judges are not accurate proxies for the unsophisticated consumer. *E.g., Boucher*, 880 F.3d at 367; *McMahon v. LVNV Funding*, Inc., 744 F.3d 1010, 1020 (7th Cir. 2014); *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999); *Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 501 (7th Cir. 1999). Nevertheless, Judge Feinerman, in *Smith v. Convergent Outsourcing, Inc.*, recently considered whether the same language at issue here violated the FDCPA and found, on a motion to dismiss, that it did not. No. 20 C 4553, 2021 WL 1648119 (N.D. Ill. Apr. 27, 2021). The Court finds *Smith* persuasive.

As in this case, the plaintiff in *Smith* claimed that the use of the phrase "this office will obtain verification of the debt or obtain a copy of a judgment" falsely implied there was a judgment against him. *Id.* at *3. After noting that the language "mirrors the disclosure required by § 1692g(a)(4), *see* 15 U.S.C. § 1692g(a)(4) (requiring that a collection letter include a statement that 'the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector')," the court in *Smith* held that the challenged phrase was plainly, on its face, not misleading or deceptive. *Id.* Instead, the court found that even an unsophisticated consumer can make "basic logical deductions and inferences" and the "basic inference from the text is that Convergent would obtain either verification of the debt or a copy of a judgment, depending on which circumstance obtained. That is how ordinary English speakers, sophisticated or not, use the word 'or.'" *Id.* Significantly, the court in *Smith* held, the defendant used the phrase "a judgment," not "the judgment," and "no formal education is needed to understand that the indefinite article 'a' leaves unaddressed whether or not a judgment exists." *Id.* Thus, the court held, this language constitutes neither a false representation nor a false threat to take any action and is neither misleading nor unfair as a matter of law. *Id.* So too here. As in *Smith*, Plaintiff's interpretation of the Letter requires an idiosyncratic reading, one that even an unsophisticated consumer would not make. *See Boucher*, 880 F.3d at 366 (quoting *Pettit*, 211 F.3d at 1060).

13

Most significantly, as noted in *Smith*, courts should avoid imposing liability based upon the model language Congress gave entities like Defendant to use: "Smith asks the court impose liability on Convergent under §§ 1692e and 1692f for using language that *Congress* required in § 1692g"; "such a conflict between different statutory provisions is to be avoided if possible, and it can be avoided here by applying the ordinary, non-technical meaning of the phrase 'obtain verification of the debt or obtain a copy of a judgment' in Convergent's letter." *Smith*, 2021 WL 1648119, at *4. Defendant here, like the defendant in *Smith*, used the same language Congress provided.

For these reasons, this Court finds the Letter plainly and clearly not misleading or unfair on its face. As a result, any claim for violation of §§ 1692e or 1692f fails, and this Court grants Defendant's motion to dismiss with respect to both claims.

## C.     Defendant's Rule 12(b)(6) Motion to Dismiss Any Claim under § 1692g(b)

Plaintiff also alleges that Defendant overshadowed its disclosure of Plaintiff's right to dispute the alleged debt, in violation of § 1692g(b), when Defendant stated it would report the debt "for as long as the law permits" if Plaintiff failed to pay. [23] at ¶ 61. Defendant argues that any claim under § 1692g(b) fails because the statement did not overshadow the disclosure but simply warned Plaintiff of the potential consequences of not paying the alleged debt. [26-1] at ¶ 37.

15 U.S.C. § 1692g(a) specifies the disclosures a debt collector must include in its notice to a debtor regarding the debtor's right to dispute or verify an alleged debt

14

within a 30-day validation period. 15 U.S.C. § 1692g(b) prohibits any communication during the 30-day period from overshadowing the disclosure of the debtor's right to dispute or verify the alleged debt. Overshadowing typically occurs when a dunning letter misrepresents the amount of time remaining for a debtor to dispute the alleged debt. *See Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 519 (7th Cir. 1997) (holding that a dunning letter overshadowed a debtor's right to dispute an alleged debt when the letter stated payment was due within 30 days of receipt of the letter because it contradicted the debtor's right to dispute the alleged debt within 30 days); *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997). In *Bartlett*, the Seventh Circuit determined that a debtor's right to dispute was overshadowed when the dunning letter stated the debtor would be sued if he did not pay within one week, but also stated that the debtor had 30 days to contest the debt. 128 F.3d at 501. The Court found the juxtaposition of the two time periods clearly confusing to the unsophisticated consumer and held that the debtor successfully asserted a violation of the FDCPA. *Id.* at 501–02.

Here, Defendant's letter stated that it would continue credit reporting "for as long as the law permits" if Plaintiff failed to pay but also clearly stated that Plaintiff had 30 days to dispute the debt. Unlike the dunning letter in *Bartlett*, however, Defendant's Letter did not demand immediate payment and thus did not overshadow the amount of time remaining in the verification period. [26-1] at ¶ 37.

Language encouraging debtors to pay their debts by notifying them of the potential negative consequences of default does not, without more, overshadow; indeed, "during the validation period, the debtor's right to dispute coexists with the

15

debt collector's right to collect." *Durkin v. Equifax Check Servs.*, 406 F.3d 410, 417–18 (7th Cir. 2005) (affirming the grant of summary judgment in favor of the debt collector when follow-up letters demanded payment because debt collectors are "perfectly free" to pursue collection efforts within the validation period).

In *Zemeckis v. Global Credit & Collection Corp.*, an instructive case, the debtor alleged that certain language in the defendant debt collector's dunning letter overshadowed the statutorily-mandated validation notice. In particular, the plaintiff emphasized the letter's instructions to "take action now" and to "call [defendant's] office today" and its insistence that defendant had the "right to pursue legal action against her," warning that her account met the "guidelines for legal action" and that defendant "may be forced to take legal action." 679 F.3d 632, 634, 637 (7th Cir. 2012). The Seventh Circuit held that these phrases, at worst, amounted to "puffery" and that the repeated threat of legal action failed to convert the puffery into a contradictory payment deadline; they did not overshadow the validation notice, but "alerted [plaintiff] only to the possible repercussions she faced for failing to pay." *Id.* at 636–37. So too here. In fact, the letter at issue in this case is more benign and conveys less urgency than the letter at issue in *Zemeckis*. As a result, the Court finds that Plaintiff cannot state an overshadowing claim based upon the challenged language. To the extent Plaintiff has intended to allege a separate claim for violation of § 1692g(b), her claim fails, and this Court grants Defendant's motion to dismiss any claim under this section.

## IV. Conclusion

For the reasons explained above, this Court grants Defendant's motion to dismiss for failure to state a claim [26] and directs the Clerk to enter judgment of dismissal. Civil case terminated.

Dated: September 24, 2021

Entered:

John Robert Blakey
United States District Judge